Eliza Fusz SHEAHAN,
Appellant/Cross-Respondent,

v.

Andrew Patrick SHEAHAN,
Respondent/Cross-Appellant.

Nos. 50547, 50567.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 21, 1986.

Motion for Rehearing and/or Transfer
Denied Nov. 25, 1986.

Application to Transfer Denied
Jan. 13, 1987.

82

Richard B. Scherrer, Private Atty., St. Louis, for appellant/cross-respondent.

Michael David Hart, Private Atty., St. Louis, for respondent/cross-appellant.

DOWD, Judge.

The marriage of Appellant/Cross-Respondent Eliza Fusz Whittemore, formerly Sheahan, (hereinafter Wife) and Respondent/Cross-Appellant Andrew Patrick Sheahan (hereinafter Husband) was dissolved by a decree of the St. Louis County Circuit Court on September 27, 1982. Two minor children, Andrew, currently age 7, and Ashley, currently age 5, were born of the marriage. A marital settlement agreement was incorporated into the decree. It provided, inter alia, that Husband would pay all reasonable educational expenses for the children provided he consented to Wife's choice of school and such consent was not to be unreasonably withheld.[1] Custody was awarded to Wife. Andrew was enrolled at Rohan Woods School for kindergarten for the 1984–85 academic year. Husband paid all expenses (excluding lunches).[2] A letter dated December 5, 1984, was enclosed with the payment in which Husband stated that payment was not to be construed as consent for the present or any future year. Andrew was then enrolled at Rohan Woods for first grade and Ashley for kindergarten in the 1985–86 academic year. Husband again refused consent and also·withheld payment.

1. The agreement states: "7. *Children's Educational Expenses:* Husband agrees and shall pay all reasonable expenses associated within the education of said minor children, including, but not limited to, tuition, room and board, fees, supplies, books and travel, incurred during the course of the attendance of said minor children at any educational institution, including preschool, elementary school, high school and college or university. Husband's obligation to pay said educational expenses shall not terminate when each minor child attains the age of twenty-one, but instead shall continue thereafter until said child completes four years of attendance at a college or university while pursuing an undergraduate degree, provided that said child commences said attendance no later than the fall semester following his graduation from high school and, provided further, that during said four year period, said child carries a regular course load sufficient to qualify said child as a full time student and that the four years are consecutive and successive in nature. So long as Wife has permanent custody, Wife shall have the right to determine and choose the preschool, elementary school, high school and college or university. With respect to a choice of high school and college or university, the Wife shall give due regard to the choice of the child and the Wife shall not unreasonably disregard the child's choice of schools. Husband's obligation to pay the aforesaid expenses is contingent on his consent to wife's determination and choice of schools, which said consent shall not be unreasonably withheld, considering all factors, including, but without limitation to consideration of the husband's financial status, the location of the school, the quality of the school and the child's best interests. In the event the minor child is not emancipated, the husband shall not be obligated to pay the child support for said child during the period of time the husband is paying room and board for such child.

2. Wife, in a letter dated December 26, 1984, states that she is willing to pay the lunch fee.

Wife then brought a Motion for Citation of Civil Contempt or in the Alternative to Enforce Decree. The circuit court found the tuition costs for both children to equal $7,000.00 and that it would be equitable for the Husband to be obligated to pay one-half. It was therefore ordered that Husband pay $1,750.00 per child for the 1985–86 academic year and one-half of the tuition costs per child for subsequent years so long as they are enrolled at Rohan Woods. The court also ordered that judgment be entered for Husband as to the contempt portion of Wife's motion. Wife appeals and Husband cross-appeals from the order requiring the Husband to pay one-half of the tuition costs. We reverse in part and affirm in part.

Among the court's findings are the following: (1) Husband presented no evidence as to his financial status; (2) the location of the school is not unreasonable; (3) the parties have stipulated that Rohan Woods is a quality school; (4) attendance at Rohan Woods is in the children's best interests; (5) Husband's refusal to consent was based on a desire that the children be sent to Catholic schools in order to encourage their being raised in the Catholic faith; (6) Husband's consent was therefore unreasonably withheld as Wife, as custodian, has by statute,[3] the right to determine not to raise the children in the Catholic faith; and (7) the tuition costs are not unreasonable for a private school in the St. Louis area.

## I.

Wife raises two points on appeal: (1) the court erred in requiring respondent to pay only one-half because the agreement requires the Husband to pay all of the expenses; and (2) an award of one-half constitutes a modification of the decree of dissolution without a proper hearing.

Since this was a court tried case, on appellate review "the court shall review the case upon both the law and the evidence as in suits of an equitable nature." Rule 73.-01. This has been construed to mean that:

[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong.

*Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Despite the highly deferential standard we find that an award of only one-half is not supported by substantial evidence.

This dispute centers on the interpretation to be placed on the word "reasonable" in the phrase "all reasonable expenses" in Paragraph Seven of the Marital Settlement Agreement. The trial court made no specific ruling as to this issue. It has been raised on appeal as a result of the one-half award.

Wife contends that the only contingency affecting the Husband's obligation is that of his consent. She places the emphasis on "all" and refers us to *Witzke v. Witzke*, 662 S.W.2d 873 (Mo.App.1983). In *Witzke* the husband was required to pay all medical and dental bills. There was no modifier such as "reasonable." There was, therefore, no ambiguity created. The provision was enforceable once evidence of the specific amount of the bills was introduced. We do not find *Witzke* helpful since the case before us requires the interpretation of the terms of the agreement as opposed to proving an amount.

Husband contends that "reasonable" means that portion of the expenses the court finds reasonable.[4] He offers *Nelson*

---

3. Section 452.405, RSMo 1978, provides, inter alia, that, absent a contrary agreement, the custodian may determine the child's upbringing, including his education, health care, and religious training.

4. Husband also contends that his consent was reasonably withheld. This contention will be addressed in that portion of the opinion dealing with the cross-appeal.

*v. Nelson,* 516 S.W.2d 574 (Mo.App.1974), and *Keltner v. Keltner,* 589 S.W.2d 235 (Mo. banc 1979), for the proposition that agreements must be construed on their wording to ascertain the intent of the parties and that words must be given their established, legal meaning. *Nelson* and *Keltner* were part of a long line of cases which attempted to resolve whether a maintenance agreement was decretal or contractual.[5] In *Keltner* "statutory alimony" was the term to be construed. " 'Statutory alimony' has an established meaning which is understood by lawyers and which is consistently used by the Missouri courts." *Keltner, supra,* at 238. Husband offers no such established meaning for "reasonable." "The word, as applied to any set of circumstances, has an elastic meaning, depending greatly upon the position and viewpoint of the one who utters it and the one who interprets it." *Anderson v. St. Louis-San Francisco Railway Co.,* 367 S.W.2d 657, 660 (Mo.App.1963).

■ We decline to ignore the term as Wife would have us do and agree with Husband that "reasonable" was inserted for a purpose. We disagree, however, as to that purpose. There is no indication anywhere else in Paragraph Seven that the parties intended to apportion tuition expenses. "Reasonable" serves to modify expenses. It does not change *all* to one-half. We find the more tenable construction to be that "reasonable" modifies the types of expenses incurred such as those listed in the agreement. Once the expense is found to be reasonable, the Husband is obligated to pay the entire expense. We do agree that "reasonable" is intended as a limitation on the Wife's freedom to obligate the Husband, but the limitation is not intended to apportion responsibility. The consent portion of the agreement limits the Wife's choice of school and the expenses portion limits the types of expenses associated with that choice. These expenses, however, must stand or fall in their entirety. It appears unlikely that the parties intended the courts to apportion educational costs in determining periodically what is a "reasonable" share. Tuition obviously is a reasonable expense incidental to education. It is also specifically mentioned in the agreement.

■ Husband had ample opportunity at trial to object to the tuition costs as his financial status is one of the factors to be considered in the withholding of consent. He chose not to put his financial status in issue and should be precluded from doing so now in the guise of construing "reasonable."

We therefore remand to the trial court with instructions that an order be entered requiring the Husband to pay the entire tuition costs for so long as the children remain enrolled at Rohan Woods.

In light of our favorable ruling on Wife's first point, it is unnecessary to address her second point.

## II.

Husband raises three points on cross-appeal: (1) The court erred in failing to direct a verdict because Wife failed to present any evidence that consent was unreasonably withheld; (2) The court erred in ordering the Husband to pay because his consent was reasonably withheld; and (3) The court erred in overruling Husband's motion to dismiss as the provision is void as decretal because it provides for educational expenses beyond the age of twenty-one and the appropriate remedy is an action on the contract.

The first two points address the sufficiency of the evidence and will be discussed jointly. The issue is primarily one of witness credibility.

■ The trial court assesses the credibility of witnesses in a court tried case. *Parker v. Rogers,* 698 S.W.2d 617, 618 (Mo. App.1985). "It is the trial court's prerogative to determine the credibility of the parties and to accept or reject all, part or none of their testimony." *Trapani v. Trapani,*

---

5. This issue was addressed in *Bryson v. Bryson,* 624 S.W.2d 92 (Mo.App.1981), which stated that "[t]he courts no longer interpret the intention of the parties to determine the nature of the par-

ties' spousal maintenance obligations." *Id.* at 95. The rule is therefore irrelevant for our purposes.

684 S.W.2d 500, 503 (Mo.App.1984). This is true even if the evidence is uncontradicted. *Marriage of Baker*, 584 S.W.2d 449, 450 (Mo.App.1979).

Husband testified to several reasons for the withholding of his consent. Among these were: (1) better athletic opportunities at the Catholic schools; (2) better access to information concerning the children; (3) attending the same school as other children from the neighborhood; and (4) a moral obligation to raise the children as Catholics.

Wife introduced evidence that: (1) Rohan Woods is a quality school; (2) Andrew had made significant progress while attending the school; (3) the school is in the medium price range; and (4) she intends to raise the children in the Episcopalian faith.

■ The trial court found that the consent was refused due to the desire to raise the children in the Catholic faith. We find no reason to disturb the trial court's finding as it was within the trial court's discretion to reject the other reasons testified to by Husband. When asked at trial why he wanted the children to attend a Catholic school, Husband replied "for a variety of reasons. The most important of which the children were baptized Catholics; they are Catholics." In light of this testimony and the evidence presented by Wife, we decline to disturb the trial court's additional finding that the consent was unreasonably withheld. We agree that consent cannot be withheld in an attempt to influence the religious upbringing of the children. Wife is fully within her statutory rights in choosing to raise them as Episcopalians.

Husband's second point, that his consent was reasonably withheld, is therefore denied as we find substantial evidence to support the trial court's finding.

Husband's first point, that the court erred in failing to direct a verdict, is also denied in that Wife introduced the previously mentioned evidence as well as a letter of January 22, 1985, written by Husband and received by Wife. In the letter, Husband stated his desire that the children be educated in Catholic schools. As this desire was ultimately determined to be the basis for his unreasonably withholding consent, Husband's contention that Wife failed to introduce any evidence is without merit.

■ Husband contends that Wife has to prove the financial ability of the father before the court can award private school tuition and cites *Sunderwirth v. Williams*, 553 S.W.2d 889 (Mo.App.1977), and *Stitt v. Stitt*, 617 S.W.2d 645 (Mo.App.1981). In both of those cases the moving party requested a modification of the decree as opposed to enforcement of an already existing decree. In neither of those cases had the father expressly agreed in writing to pay the educational expenses.

Husband's third point, that the provision is void as decretal, is also denied. Because the agreement provides for educational payments for the children beyond the age of twenty-one, Husband contends the proper remedy is an action on the contract. He cites *Sunderwirth* for the proposition that a court order is void if it adjudicates an obligation to support adult children. *Sunderwirth, supra*, at 893. Because the parties in *Sunderwirth* did not incorporate a separation agreement into the decree, it is not controlling here.

The Dissolution of Marriage Act addresses the child support issue in Missouri. Section 452.370(3), RSMo 1978, provides: "Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child." This is substantially similar to the 1970 Uniform Marriage and Divorce Act § 316(c) which provides: "Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child but not by the death of a parent obligated to support the child." The commissioner's note following § 316(c) explains: "Subsection (c) is designed to permit the parties to agree in writing or the court to provide in the decree that the obligation of each parent to support the child will extend beyond the child's emancipation...." The Illinois Supreme Court recently construed a "nearly identical" statute in *Finley v. Finley*, 81 Ill.2d 317, 43 Ill.Dec. 12, 16, 410 N.E.2d 12, 16 (1980). See Illinois Marriage and Dissolution of

Marriage Act, Ill.Rev.Stat. ch. 40, § 510(c) (1977). In construing the provision regarding support and the consequences of emancipation, the court held that "[t]he purpose ... is not to release the parent from the duty to support an emancipated child; such a duty does not ordinarily exist. Rather, the section's focus is on allowing parents to agree, or the decree to provide, that parents be liable for support subsequent to the emancipation of the child." *Id.*, 43 Ill.Dec. at 16, 410 N.E.2d at 16.

█ We agree with this interpretation. The language of the statute supports a conclusion that child support may be extended beyond majority by an agreement incorporated into a decree. Here the parties expressly agreed and incorporated into the decree a provision that the Husband would pay the educational expenses. We therefore decline to declare void as decretal the educational provision of the separation agreement. Point denied.

Affirmed in part and reversed in part.

SMITH, P.J., and REINHARD, J., concur.